IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JASON TODD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-1006-RAH-KFP |
| | ) | [WO] |
| DAVID P. HICKS, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason Todd ("Plaintiff" or "Todd"), an adult resident of Chilton County, Alabama, alleges that City of Clanton police officers David P. Hicks, Jr. ("Hicks") and Cameron Bates ("Bates") violated his constitutional rights and committed outrage and negligence in connection with his arrest and prosecution for manslaughter after his wife was struck and killed by a vehicle while walking on a dark road in Chilton County, Alabama on August 4, 2018.

The case now comes before the Court pursuant to the Motion to Dismiss (Doc. 6) and supporting brief (Doc. 7) filed by Hicks, Bates, and the City of Clanton (collectively, the "Defendants"). Todd has filed a response, (Doc. 16), and the Defendants a reply, (Doc. 17). For the following reasons, the motion will be granted in part and denied in part.

## I.     MOTION-TO-DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## II.    JURISDICTION

The Court exercises subject matter jurisdiction over the Plaintiff's claims pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

## III.    BACKGROUND

The relevant facts, as alleged by and viewed in the light most favorable to Todd, are as follows:

On August 4, 2018, after a night of apparently heavy drinking at Friends Steakhouse in Clanton, Alabama, Todd's wife, Tonya Anderson ("Anderson"), attempted to walk across State Highway 31 in Chilton County, Alabama. Tragically, motorist Carey Roger Glenn struck her with his vehicle and then drove away; Anderson died instantly.

Hicks and Bates were officers employed with the Clanton Police Department and were assigned to investigate the traffic homicide.   Following a lengthy interrogation of Todd, and despite his repeated insistence otherwise, Hicks and Bates opined that Todd had thrown Anderson's car keys across the road and thereby caused his intoxicated wife to walk into traffic. Furthermore, Todd avers that the officers reached this conclusion despite contravening video evidence and eyewitness reports

from restaurant patrons that Todd did not throw the keys and had turned his back when Anderson stepped into the highway.

Following the investigation, Hicks authored a written investigative report in which he wrote that Todd was the "last person to physically possess the car key" and it was therefore "only logical" to conclude that Todd would have been the one to throw the keys. (Doc. 1, p. 34.) He continued, stating Todd "deliberately and fully intentionally threw the key chain" and "[saw] his wife walking towards the roadway." (*Id.*, pp. 35, 31-32.) This report was delivered to a Chilton County prosecutor with Hicks's recommendation that "Jason Michael Todd should be held solely responsible and fully accountable for the wrongful death of Tonya Sherre Anderson." (*Id.*, p. 35.) He also recommended that Glenn, the driver who struck Anderson and left the scene without stopping, be "cleared of responsibility," stating that Glenn had not seen Anderson on the roadway, was blind in one eye, the road was dimly lit, and that the contact of Anderson's body with Glenn's vehicle was "more consistent with hitting a small stick or maybe even a small animal, and not with a full grown human being." (*Id.*, p. 33.) This report was presented to a grand jury, along with testimony from Hicks and Bates.

The grand jury indicted Todd for manslaughter on February 1, 2019, and criminal proceedings commenced. Todd's criminal defense attorneys filed a motion to quash the indictment, and during a contested hearing held in Chilton County

Circuit Court, Hicks testified to the lack of evidence showing that Todd had thrown Anderson's keys. (*Id.*, p. 36.) On June 17, 2020, the circuit judge granted Todd's motion to quash and dismissed the criminal charges brought against him with prejudice for lack of probable cause. (*See* Doc. 1-3.)

Todd filed his four-count Complaint on December 9, 2020. (Doc. 1.) Todd alleges malicious prosecution (Count I) against Hicks and Bates under federal law and Alabama common law; municipal liability against the City under federal law (Count II); a state law claim for outrage (Count III) against Hicks and Bates; and a state law failure-to-train and/or supervise claim (Count IV) against the City.

## IV.    DISCUSSION

### A.    Count I – § 1983 and Common Law Malicious Prosecution

In Count I, Todd first raises a claim for malicious prosecution against Hicks and Bates under § 1983 and Alabama common law. More specifically, Todd alleges that Hicks and Bates violated his Fourth Amendment right to be free from seizure in the absence of probable cause when Hicks recommended the criminal prosecution of Todd for the wrongful death of his late wife and when the indictment was procured by the testimony of Hicks and Bates.

Hicks and Bates offer four primary arguments in support of their motion to dismiss this claim, including (1) the inadequacy of Todd's factual allegations that a constitutional violation occurred, as well as Hicks and Bates's entitlement to

(2) absolute immunity, (3) qualified immunity, and (4) state-agent immunity. The Court takes up each of these arguments in turn.

## 1.    *Malicious Prosecution*

The Eleventh Circuit has long recognized malicious prosecution as a violation of the Fourth Amendment that is cognizable under § 1983. *See Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020). In order to state a claim for malicious prosecution under both federal and Alabama law, a plaintiff must "prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler,* 323 F.3d 872, 881 (11th Cir. 2003) (citing *Uboh*, 141 F.3d at 1002-1004). These elements include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 881-82; *see also Delchamps, Inc. v. Bryant,* 738 So. 2d 824, 831-32 (Ala. 1999) (stating the elements of common law malicious prosecution in Alabama as the same).

Defendants, without conceding that either Hicks or Bates acted with malice, focus their challenge on the first element. To this end, they argue that Todd has failed to provide factual contentions to support his allegations that Hicks and Bates actually instituted or continued a criminal proceeding against Todd. Instead, as the

6

Defendants' brief argues, Hicks filed no charges himself and merely recommended prosecution of Todd; it was the district attorney's own investigation, and thereafter the grand jury's return of an indictment that provided an independently adequate basis for bringing criminal charges against Todd. As the theory goes, Hicks and Bates's liability is now precluded because of these intervening actors – the district attorney and the grand jury.

In response to the Defendants' Motion, Todd argues that the pleading standard at this stage only requires him to allege that Hicks and Bates's nontestimonial actions[1] "tainted" the indictment. Here, Todd continues his claim that Hicks and Bates's nontestimonial actions, namely the abusive interrogation tactics of Todd and the subsequent investigative report that recommended a criminal prosecution, prejudiced the grand jury proceedings. Todd further argues that by submitting a report to the district attorney, Hicks and Bates instituted the prosecution of Todd, allowing Todd to maintain the present civil action against Hicks and Bates.

---

[1] In both his brief and oral argument, Todd makes a clear distinction between the sworn testimony the officers presented to the grand jury and their nontestimonial actions taken prior to offering such testimony. Whereas a grand jury witness is afforded absolute immunity from § 1983 claims based on his or her witness testimony, conduct undertaken before serving as a witness is not afforded the same protection. *See King v. Harwood*, 852 F.3d 568, 590 (6th Cir. 2017) (Boggs, J.) ("falsifying or fabricating evidence may be material to the grand-jury indictment *even though* they do not constitute 'testimony' or related preparation for testimony, and nothing in the caselaw indicates that such actions somehow *mutate into* grand-jury testimony simply because they are material to the return of an indictment.").

While the Eleventh Circuit has yet to directly address whether an indictment per se absolves an investigating officer of liability, *see Williams v. Aguirre*, 965 F.3d 1147, 1168 (11th Cir. 2020), the Circuit has not foreclosed the notion that including materially false statements in an investigative report that later leads to an indictment may subject the acting officer to suit. *See Barts v. Joyner*, 865 F.2d 1187, 1195-96 (11th Cir. 1989) (holding that intervening acts of a grand jury cannot shield an arresting officer from liability where deception or undue pressure was exercised); *but see Jones v. Cannon*, 174 F.3d 1271, 1287 (11th Cir. 1999) (finding intervening acts of prosecutor and grand jury in returning an indictment broke the chain of causation from officer's false arrest). In *Williams,* the Eleventh Circuit additionally drew attention to the Supreme Court's suggestion, albeit in dicta, that a plaintiff may maintain a claim under the Fourth Amendment for a seizure that follows an indictment. *See Manuel v. City of Joliet, Ill.*, ––– U.S. ––––, ––––, 137 S. Ct. 911, 920 n.8, 197 L. Ed. 2d 312 (2017) ("Whatever its precise form, if the [grand jury] proceeding is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights, for all the reasons we have stated.").

Based on these principles, it appears that Todd's claim for malicious prosecution against Hicks, in particular, passes initial muster at this stage. Hicks's involvement stretched from the earliest stages of the investigation of Anderson's

death to the final dismissal of the criminal charges against Todd. Moreover, it was the report prepared by Hicks on which Todd principally bases his claims that nontestimonial evidence helped procure a tainted grand jury indictment. While the extent to which his allegedly false report was a causal factor in procuring the indictment against Todd constitutes a factual question to be resolved in later proceedings, it bears noting that by alleging "fraud, perjury, subornation, or [] the willful suppression of known material facts," a plaintiff's claim for malicious prosecution will survive dismissal. *Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 965 (Ala. 1981).

Here, Hicks did, without probable cause or evidentiary support based on the findings of the presiding circuit judge, implicate Todd as the sole cause of his wife's death. His investigative report, in which he recommended criminal prosecution of Todd and pronounced the innocence of the driver that actually struck her and drove away, was provided to the district attorney and the grand jury, and it could reasonably be viewed as the primary impetus for lodging criminal charges against Todd. Certainly, by "filing a report with the prosecutor," Hicks "initiate[d] prosecution" where Alabama law is concerned. *Ex parte Harris*, 216 So. 3d 1201, 1215 n.2 (Ala. 2016). And under federal law, too, by "set[ting] the wheels of government in motion by instigating a legal action," Hicks could be held liable for his instigating role here. *Wyatt v. Cole*, 504 U.S. 158, 164-65 (1992).

Further, from the face of the Complaint, it appears that Hicks asserted that Todd "willfully thr[ew] the key chain across a five lane highway and then allow[ed] his intoxicated to wife to walk into traffic" in direct conflict with video evidence and witness testimony that reflected otherwise. Because Todd's allegations, if true, would plausibly indicate, at the very least, the omission of material facts in the report and a disregard for the probable cause standard, Todd has therefore stated a claim for malicious prosecution under both federal and Alabama law. The Court thus rejects Hicks's request for dismissal on grounds that Todd has failed to support his malicious prosecution claim with adequate factual contentions.

The viability of the malicious prosecution claim against Bates is murkier. From the face of the Complaint, it appears that Bates's involvement in the proceedings against Todd was limited to his participation in the interrogation of Todd, and later to the testimony he offered as a grand jury witness (for which he has invoked absolute immunity). While neither party briefs Bates's role with any specificity, the Court cannot plausibly infer liability based solely on his role as an interrogating officer, especially in the instant case where none of the claims in the Complaint directly allege that the interrogation itself deprived Todd of his constitutional rights. *Cf. Heining v. Abernathy*, 295 So. 3d 1032, 1040 (Ala. 2019), *reh'g denied* (Oct. 11, 2019) ("It is a complete defense to a malicious prosecution action that the defendant was not the determining factor in the decision to

prosecute.") (quoting 54 C.J.S. Malicious Prosecution § 13, p. 746 (2010)). As it concerns Bates, the link between the interrogation and the indictment is simply too tenuous to infer a causal relationship, and here, no other factual contentions connect the interrogation itself to the tainted indictment.[2]

Therefore, Todd has failed to allege that Bates instituted criminal process against him, and thus has failed to state a § 1983 claim against Bates.[3]  Accordingly, Count I, as to Bates, is due to be dismissed.

### 2.    *Claims Under Federal Law: Absolute Immunity*

Hicks also has invoked a litany of immunities as grounds for dismissal of Count I, beginning with his contention that he is entitled to absolute immunity. Hicks argues that the absolute immunity afforded to witnesses "for their testimony at trial or in front of the grand jury" provides additional grounds for dismissal. *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) (internal citations omitted). And indeed, a grand jury witness enjoys "absolute immunity with respect to any claim based upon the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).

---

[2] Todd does not allege that the false statements made in the interrogation, or that the interrogation tactics employed, violated his constitutional rights. Rather, he argues that the intimidating nature of the interrogation and the false statements made therein demonstrate malice and illustrate the "circumstances surrounding and attending prosecution." *Williams v. City of Montgomery*, 839 F. App'x 356, 364 (11th Cir. 2020) (citations and quotation marks omitted).

[3] Because Todd has not established a constitutional violation as to Bates, the Court has sufficient grounds to dismiss the malicious prosecution claim against Bates and will not discuss the merits of his numerous asserted immunities.

But crucially, Todd has clarified that he does not rest his claims on any testimony Hicks gave at the grand jury proceeding.[4]  Instead, Todd maintains that he challenges only the nontestimonial actions taken by Hicks when he interrogated Todd, his false statements about Todd's culpability for Anderson's death, and his recommendation that Todd be criminally prosecuted. Were it the case that Todd was solely alleging that Hicks's grand jury testimony produced the indictment, absolute immunity would bar this claim. But Todd's challenge as it concerns Hicks's preparatory activity, including his instigation of the case and alleged fabrication of probable cause in the report, goes beyond Hicks's grand jury testimony and does not enjoy absolute immunity. *See King*, 852 F.3d at 584; *Rehberg*, 566 U.S. at 370 n.1 (noting only qualified immunity, and not absolute immunity, extends to law enforcement officers who, e.g., falsify affidavits or fabricate evidence) (citing *Kalina v. Fletcher,* 522 U.S. 118, 129–131 (1997); *Malley v. Briggs,* 475 U.S. 335, 340–345 (1986); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-76 (1993)). Accordingly, Hicks is not entitled to absolute immunity for the alleged malicious prosecution of Todd.

### 3.      Claims Under Federal Law: Qualified Immunity

---

[4] To the extent Todd does seek to hold the Defendants liable for testimony that Hicks and Bates provided to the grand jury, Todd's claims are due to be dismissed because they are entitled to absolute immunity.

Hicks next contends that he is entitled to qualified immunity to the extent his claims are not barred by absolute immunity. "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation and quotation marks omitted). It is designed "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Wood,* 323 F.3d at 877 (citation and quotation marks omitted).

The burden begins with Hicks, and then shifts: "An official asserting that he is entitled to the protection of qualified immunity must initially establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  Once the defendant has made this showing, the burden shifts to the plaintiff." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (internal citations omitted). Assuming Hicks acted within his discretionary authority, which is a point that Todd does not really challenge at this stage, Todd must satisfy the two-pronged qualified immunity standard: "(1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were clearly established when the defendant committed the act complained of."

*Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citation and quotation marks omitted). As already touched on, the Complaint meets the governing standard since Todd challenges the constitutional violation itself as to Hicks, thereby narrowing the focus of this Court's qualified immunity discussion to the "clearly established" requirement.

"The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [police officer] that his conduct was unlawful in the situation he confronted." *Loftus v. Clark–Moore,* 690 F.3d 1200, 1204 (11th Cir. 2012) (citation and quotation marks omitted). While Todd need not demonstrate that there is case law specifically addressing his factual scenario, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

With these principles in mind, the allegations in the Complaint clearly do not support, for the purposes of a motion to dismiss, a finding that Todd's claims against Hicks are barred by the defense of qualified immunity. As Todd aptly notes, "falsifying facts to establish probable cause is patently unconstitutional and has been so long before . . . 1995." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004), *abrogated on other grounds by Williams*, 965 F.3d 1147; *see also Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 2004) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional

rights."). The Complaint describes such conduct, detailing an investigation in which Hicks grossly ignored the probable cause standard, mischaracterized and misstated evidence, ignored other evidence, failed to interview several eyewitnesses, and formulated a speculative and factually unsupported finding about Todd's role in Anderson's death. Hicks then logged his theory and finding in an investigative report that was provided to the district attorney's office and then to the grand jury with a recommendation that Todd be found criminally liable for Anderson's death. These factual contentions preclude Hicks's entitlement to the defense of qualified immunity at this juncture, and dismissal is therefore not warranted on this ground.

### 4. Claims Under State Law: State-Agent Immunity

Just as Hicks enjoys no qualified immunity at this stage, he enjoys no state-agent immunity either. Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Hill v. Cundiff*, 797 F.3d 948, 980 (11th Cir. 2015) (quoting *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002)). This immunity also shields police officers for suit for actions taken when "exercising judgment in the enforcement of the criminal laws of the State . . . ." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). But importantly, "the same facts which establish an entitlement to qualified immunity may also establish that the officers are entitled to discretionary-function

immunity" such as Alabama's state-agent immunity. *Hunter v. Leeds*, 941 F.3d 1265, 1284 (11th Cir. 2019).

To the contrary, where the facts plausibly allege that an officer acted with "willful or malicious intent or in bad faith," discretionary-function immunity will be withheld. *Williams v. City of Montgomery*, 839 F. App'x at 363 (citation and quotation marks omitted). "Malice can 'be inferred from want of probable cause' and 'from circumstances surrounding and attending prosecution." *Id.* (citing *Ravenel v. Burnett*, 5 So. 3d 592, 600 (Ala. Civ. App. 2008), and quoting in turn *Thompson v. Harris*, 603 So. 2d 1086, 1088–89 (Ala. Civ. App. 1992)). And here, the Complaint alleges that Hicks acted maliciously and without probable cause in the manner in which he conducted the interrogation and in formally recommending Todd's prosecution based on a false premise.  Dismissal based upon Hicks's entitlement to state-agent immunity would therefore be improper and premature at this stage.

### B.    Count II – § 1983 Municipal Liability

Count II of the Complaint additionally seeks to hold the City liable for malicious prosecution under § 1983. As it concerns this claim, which is asserted on the theory that the City failed to train and supervise its law enforcement officers, including Hicks and Bates, the City argues that the Complaint does not identify

16

either an officially promulgated policy, a customary practice, or deliberate indifference on the City's part.

In oral argument, Todd's counsel admitted that no promulgated City policy or customary practice authorized Hicks to insinuate Todd's culpability for his wife's death without probable cause, and none is identified in the Complaint. Instead, Todd rests his municipal liability claim on the narrow single incident standard set forth in *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989), which permits municipal liability for failure to train or supervise "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and "the need for more or different training is *so obvious*, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390 (emphasis added).

At the outset, it bears mentioning that "with respect to police officer training, the deliberate indifference standard is appropriately a high threshold." *Davis v. City of Montgomery*, 220 F. Supp. 3d 1275, 1282 (M.D. Ala. 2016) (citing *City of Canton*, 489 U.S. at 391). "[M]unicipal liability is limited to action for which the municipality is actually responsible." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (citation and quotation marks omitted). Further, a "municipality's culpability is at its most tenuous where a claim turns on failure to

train." *Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 800 (11th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). *See, e.g.*, *City of Canton*, 489 U.S. at 382 (recognizing municipal liability only in the extreme situation where *no* officer training provided instruction on when to summon medical care for an injured detainee). To sustain this claim, Todd must plead facts showing that the constitutional violation "was *so* predictable that failing to train the [officers] amounted to a *conscious disregard*" for Todd's constitutional rights. *Connick*, 563 U.S. at 71.

Todd has not met this difficult standard. The Complaint fails to identify with any specificity the circumstances giving rise to the City's liability in the present case, and the City states it best when noting that nowhere does the Complaint detail factual allegations "concerning the City's knowledge, actions, training regime, or deliberate indifference towards its citizens' constitutional rights." (Doc. 17, p. 3.)  Rather, the Complaint includes a myriad of conclusory statements, and in essence, asks for a presumption of liability based solely on Hicks and Bates's threatening interrogation and Hicks's allegedly falsified investigative report. (*See* Doc. 1, pp. 44-47.)

But the Complaint leaves open a critical question: What did the City do or not do? *See Davis*, 220 F. Supp. 3d at 1284-85 (granting dismissal of failure-to-train claim against municipality where plaintiff/detainee did not allege facts to support that unconstitutional seizure was a highly predictable consequence of failure to train

officers on encountering persons with disabilities); *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)) ("It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens. . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision."). By providing no factual allegations concerning the training or supervision that the City did employ, and without elaborating on the "obviousness" or predictability of harms that could result from such training or supervision (or lack thereof), this single-incident claim against the City cannot survive.

### C.    Count III – Common Law Outrage

In their Motion, the Defendants argue that the statute of limitations bars Todd's claim for outrage. The statutory period for bringing such a claim in Alabama is two years. *Cont'l Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1215 (Ala. 1990) (citing Ala. Code 1975, § 6–2–38; *Archie v. Enterprise Hospital & Nursing Home,* 508 So.2d 693 (Ala. 1987)). Because Todd's outrage claim arising from the August 14, 2018, interrogation occurred more than two years prior to the filing of this action on December 9, 2020, Todd rightly concedes that this claim is time-barred. Count III of the Complaint is therefore due to be dismissed. And because no other claims remain against Bates, Bates is due to be dismissed as a defendant in this case.

### D.    Count IV – Common Law Municipal Liability

In Count IV, Todd brings his final allegation against the City, claiming the City shoulders liability for the negligent training and/or supervision of its police officers in violation of Alabama state law.  The City addresses this claim, too, in its Motion, arguing first that the Complaint alleges only intentional torts that cannot be imputed to the City as a matter of law; second, that such claims are not cognizable against municipalities under Alabama law; and finally, that Alabama's municipal non-claim statutes bar this claim in its entirety.

As a general rule, municipalities in Alabama are immune from tort liability. *See Ex parte City of Bessemer*, 142 So. 3d 543, 550 (Ala. 2013). But Ala. Code § 11-47-190 codifies a narrow exception[5], allowing municipal liability where one of a municipality's agents has acted with "neglect, carelessness, or unskillfulness." Liability for intentional torts, however, cannot be imputed to a municipality unless the City's negligence facilitated its commission. *See Ex parte Harris*, 216 So. 3d at 1216; *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1004 (Ala. 1993).

Todd argues that the City's negligent training and supervision enabled Hicks and Bates to conduct an improper interrogation and submit a false investigative

---

[5] Departing from § 1983 municipal liability claims, municipal liability claims brought pursuant to Alabama law are largely limited to those alleging *respondeat superior* theories of liability "for injuries that result from the wrongful conduct of its agents of officers in the line of duty." *City of Lanett v. Tomlinson*, 659 So.2d 68, 70 (Ala. 1995). In other words, the plaintiff must allege that a city employee committed a tort, and that the employer-employee relationship ascribes liability for that tort to the city as an employer.

report to the district attorney, thereby giving rise to its own liability. To support his position that the intentional nature of the underlying tort does not unequivocally shield an employer from suit, he cites *Big B, Inc. v. Cottingham*, in which an employer was held liable for its employee's torts of false imprisonment and sexual assault and battery against a customer. 634 So. 2d at 1003-04.

But Todd's defense of this claim, while not unpersuasive, is ultimately unavailing. Simply put, malicious prosecution is an intentional tort that does not fit within Alabama's exception to municipal immunity.[6] *See Delchamps, Inc.*, 738 So. 2d at 834; *Borders v. City of Huntsville*, 875 So. 2d 1168, 1182 (Ala. 2003); Ala. Code § 11-47-190. And here, there are no more facts alleged that demonstrate any enabling conduct on the City's part. Because dismissal is warranted where municipal immunity bars a claim, the Court need not wade into the arguments concerning fictitious defendants or the timeliness of the Complaint. Count IV is therefore due to be dismissed, and consequently, the City of Clanton is due to be dismissed as a party to this action.

## V.    CONCLUSION

Based on the foregoing, the Motion to Dismiss is GRANTED in part and DENIED in part as follows:

---

[6] The tort of outrage, while also intentional in nature, has already been dismissed and does not merit further discussion for the purposes of its interplay with municipal liability.

(1)     To the extent the Defendants move to dismiss the outrage claim (Count III) against Defendants Hicks and Bates with prejudice, the Motion to Dismiss is GRANTED.

(2)     To the extent the Defendants move to dismiss the malicious prosecution claim (Count I) without prejudice against Defendant Cameron Bates, the Motion to Dismiss (Doc. 6) is GRANTED.

(3)     To the extent the Defendants move to dismiss the claims against the City of Clanton (Counts II and IV) without prejudice, the Motion to Dismiss (Doc. 6) is GRANTED.

(4)     The City of Clanton and Cameron Bates are dismissed as defendants.

(6)     To the extent Defendant David P. Hicks, Jr. moves to dismiss the malicious prosecution claim (Count I) against him, the Motion to Dismiss (Doc. 6) is DENIED.   This matter shall proceed against Defendant David P. Hicks, Jr. on Count I.

DONE, on this the 23rd day of April, 2021.

            /s/R. Austin Huffaker, Jr.
        R. AUSTIN HUFFAKER, JR.
        UNITED STATES DISTRICT JUDGE